IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**THE MONONGALIA COUNTY**
**COAL COMPANY,**

    **Plaintiff/Counter-**
    **Defendant,**

v.                                           **Civil Action No. 1:18-cv-171**
                                                  **(Judge Kleeh)**

**UNITED MINE WORKERS OF AMERICA,**
**INTERNATIONAL UNION, and**
**UNITED MINE WORKERS OF AMERICA,**
**LOCAL UNION 1702,**

    **Defendants/Counter-**
    **Claimants.**

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 14], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

Pending before the Court are cross motions for summary judgment filed by the Plaintiff and Counter-Defendant, The Monongalia County Coal Company ("Plaintiff"), along with the Defendants and Counter-Claimants, the United Mine Workers of America, International Union, and the United Mine Workers of America Local Union 1702 (together, the "Union" or "Defendants"). For the reasons discussed below, the Court denies Plaintiff's motion and grants Defendants' motion.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 14], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

### I. PROCEDURAL HISTORY

On August 31, 2018, Plaintiff brought this action against Defendants, seeking to vacate an arbitration award. The Honorable Irene M. Keeley, United States District Judge, ordered the parties to submit a joint stipulated record, cross motions for summary judgment, and response briefs. Defendants filed an Answer and Counterclaim against Plaintiff. The case was transferred to the Honorable Thomas S. Kleeh, United States District Judge, on December 1, 2018. The parties have filed their cross motions for summary judgment, which are now ripe for consideration.

### II. BACKGROUND

Plaintiff operates the Monongalia County Mine, an underground coal mine, most of which is located in West Virginia. Defendants represent Plaintiff's bargaining unit employees for purposes of collective bargaining. The collective bargaining agreement that governs this relationship is the 2016 National Bituminous Coal Wage Agreement ("NBCWA"). The NBCWA establishes work jurisdiction of union-represented employees and provides restrictions on Plaintiff's ability to contract out this work.

**A. The NBCWA**

The NBCWA provides the following regarding "Work Jurisdiction":

**MCCC V. UMWA** 1:18-CV-171

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 14], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

> The production of coal, including removal of over-burden and coal waste, preparation, processing and cleaning of coal and transportation of coal (except by waterway or rail not owned by Employer), repair and maintenance work normally performed at the mine site or at a central shop of the Employer and maintenance of gob piles and mine roads, and work of the type customarily related to all of the above shall be performed by classified Employees of the Employer covered by and in accordance with the terms of this Agreement. Contracting, subcontracting, leasing and subleasing, and construction work, as defined herein, will be conducted in accordance with the provisions of this Article.
>
> Nothing in this section will be construed to diminish the jurisdiction, express or implied, of the United Mine Workers.

ECF No. 11-1 at 10-11.

The NBCWA discusses the precedential effect of prior arbitration decisions:

> All decisions of the Arbitration Review Board rendered prior to the expiration of the National Bituminous Coal Wage Agreement of 1978 shall continue to have precedential effect under this Agreement to the extent that the basis for such decisions have not been modified by subsequent changes in this agreement.

ECF No. 11-2 at 60. Finally, it covers the settlement of disputes:

> Settlements reached at any step of the grievance procedure shall be final and binding on both parties and shall not be subject to further proceedings under this Article except by mutual agreement. Settlements reached at

**MCCC V. UMWA**                                                1:18-CV-171

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 14], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

> steps 2 and 3 shall be in writing and signed by appropriate representatives of the Union and the Employer.
>
> . . .
>
> The United Mine Workers of America and the Employers agree and affirm that, except as provided herein, they will maintain the integrity of this contract and that all disputes and claims which are not settled by agreement shall be settled by the machinery provided in the "Settlement of Disputes" Article of this Agreement . . . , it being the purpose of this provision to provide for the settlement of all such disputes and claims through the machinery in this contract and by collective bargaining agreement without recourse to the courts.

Id. at 59, 62.

**B.    The Dispute**

The dispute leading to this litigation involves work performed at the Monongalia County Mine on February 12, 15, 16, and 17, 2018. ECF No. 1 at ¶ 8. Plaintiff hired contractors to remove and rebuild the #75 clean coal shaker screen ("75 Screen") at the mine. Id. On February 9, 2018, the Union filed three grievances (the "Grievances") on behalf of three (3) of its members (the "Grievants"), alleging that Plaintiff violated the NBCWA by hiring a contractor to perform classified work. Id. The Grievances requested "compensat[ion] for all lost wages and benefits and for . . . [the] practice to cease and desist and to be made whole

4

**MCCC V. UMWA**                                                    1:18-CV-171

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 14], GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

in all ways" (ECF No. 11-4 at 16); "8 hrs time and one half each and for this practice . . . to cease and desist and be made whole in all ways" (Id. at 18); and "8 hrs of pay and be made whole in all ways and this practice to cease and desist" (Id. at 20).

**C.   The Arbitration Award**

On May 17, 2018, the parties presented evidence at a hearing in front of Arbitrator Matthew M. Franckiewicz (the "Arbitrator"). ECF No. 1 at ¶ 9. The Arbitrator issued a Decision and Award (the "Award") on June 1, 2018, in which he sustained the Grievance. Id. ¶ 10. The Award includes the following sections: Background, Issue, Position of the Union, Position of the Employer, Analysis and Conclusions, and Award. ECF No. 11-4 at 5-11. The Arbitrator ultimately found that Plaintiff violated the NBCWA because the work on the 75 Screen was repair and maintenance work normally performed at the mine.

The central question in front of the Arbitrator, in determining whether there was a violation, was whether the work at issue was repair and maintenance work normally performed at the mine. He first described the 75 Screen's purpose and characteristics. The 75 Screen "transports and sorts coal by size." Id. at 5. It is a large apparatus with multiple components. Id.

**MCCC V. UMWA**  1:18-CV-171

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 14], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

These different parts "wear out at different rates" and are replaced as needed. Id.

The Arbitrator discussed the parties' different characterization of the work at issue. Plaintiff "characterize[d] the work as 'the complete removal and rebuild of the 75 Screen,'" while Defendants characterized the work as repair and maintenance of numerous individual parts. Id. at 6, 8. The Arbitrator cited testimony suggesting that a complete rebuild takes place every 7 or 8 years. Id.

The Arbitrator disagreed with Plaintiff's characterization of the work as a "complete rebuild." Id. at 8. He found it more appropriate to categorize the work as "performing repairs, although extensive repairs," because many original components were reused. Id. The Arbitrator wrote that "photographic evidence and testimony indicate that not all the components were replaced." Id. at 6. He wrote that "[a]ll the work was performed on an existing system, which . . . was being restored to proper working order or being kept in good working order, as distinguished from being replaced by something better." Id. at 8. He noted that even though the project was extensive, this did not change the categorization of the work. Id. at 8–9. The Arbitrator then distinguished this case from cases cited by Plaintiff about "rebuilding." Id. at 9.

6

**MCCC V. UMWA** 1:18-CV-171

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 14], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

Based on the evidence presented at the hearing, the Arbitrator found that bargaining unit employees normally and customarily performed the repairs. Id. This finding was based on Union witnesses' testimony:

> Union witnesses testified that they had repaired or replaced every component of this or other screens, and that at one time or another they had done everything that the contractor's employees did in February 2018. Union witness Rocky Barr, who is not a Grievant, testified that he has been involved in complete rebuilds of screens "down to a hole in the ground" 6 or 7 times, and that at one time or another he has changed "every bolt and nut" on the Screen.

Id. at 6. Plaintiff did not argue at the hearing that the work was construction work. Id. at 10. Plaintiff provided invoices showing that contractors had performed this work in the past, but each date provided was on a weekend. Id. The Arbitrator found that none of the limited exceptions under repair and maintenance applied. Id.

As to the Grievants' availability to do the work, the Arbitrator found that all three Grievants worked eight hours on February 12, 15, and 16, but they did not work on February 17. Id. Superintendent Roland Smith testified that the work was performed during a time when the longwall was being moved and classified employees were rebuilding a washer. Id. at 6. The Arbitrator wrote,

7

MCCC V. UMWA                                                    1:18-CV-171

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 14], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

"Notices were posted that overtime was available, and the Grievants could have worked on February 17 if they had volunteered to do so. The Grievants who testified were not requested to come in early or work over on any of the dates involved, and to the best of their knowledge none of the Grievants was mandated to work overtime on any of these dates." Id.

The Arbitrator sustained the Grievance and ordered Plaintiff to "cease and desist from contracting out repair work on the 75 Screen." Id. at 11. The Arbitrator wrote that "[t]he easiest, but perhaps not the fairest, method for allocating damages would be to award a pro rata share to each of the Grievants." Id. However, he noted, this would fail to take into account individual considerations as to who would have been working or whether individuals were available. Id. Therefore, he opted to "assign to the Parties in the first instance the task of distributing the damages to the Grievants, while retaining jurisdiction against the possibility that they may be unable to agree on a specific calculation." Id.

D.  **Parties' Contentions**

Plaintiff argues that the Union's work jurisdiction is limited to work that is normally performed at the mine, that monetary awards are to be issued only to remedy a proven loss, and

**MCCC V. UMWA** 1:18-CV-171

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 14], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

that the Arbitrator issued an award that comports with his own sense of fairness and equity. Plaintiff argues that the Arbitrator improperly classified the work because it was not normally performed by classified employees. Defendants argue that the Award is entitled to deference, that it draw its essence from the collective bargaining agreement, that the Arbitrator properly determined that Plaintiff violated the agreement, and that the Award contains no grounds for overturning it.

### III. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." Id. at 317-18. Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to

MCCC V. UMWA                                                1:18-CV-171

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 14], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

find for the non-moving party, there [being] no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### IV. GOVERNING LAW

This Court may review labor arbitrators' decisions under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, but this power of review is "extremely limited." Cannelton Indus., Inc. v. Dist. 17, UMWA, 951 F.2d 591, 593 (4th Cir. 1991). This is because "[t]he parties to a collective bargaining agreement bargained for the arbitrator's interpretation, and 'so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation . . . is different from his.'" Island Creek Coal Co. v. Dist. 28, UMWA, 29 F.3d 126, 129 (4th Cir. 1994) (citing United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960)). The Supreme Court of the United States, in the "Steelworkers Trilogy,"[1] has "emphasized that federal courts should refuse to review the merits of an arbitration award under a collective bargaining

---

[1] The Steelworkers Trilogy includes the following cases: United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960); and United Steelworkers of America v. American Mfg. Co., 363 U.S. 564 (1960).

MCCC V. UMWA											1:18-CV-171

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 14], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

agreement." Mutual Mining, Inc. v. Dist. 17, UMWA, 47 F.3d 1165, at *2 (4th Cir. 1995) (unpublished). Both an arbitrator's findings of fact and interpretation of the law are accorded great deference. Upshur Coals Corp. v. UMWA, Dist. 31, 933 F.2d 225, 229 (4th Cir. 1991). In addition, "[t]he selection of remedies is almost exclusively within the arbitrator's domain." Cannelton, 951 F.2d at 593-54 (citing United Paperworkers Int'l Union v. Misco, 484 U.S. 29 (1987)).

Still, there are some limitations on arbitration awards. The award "must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice." Misco, 484 U.S. at 38. In addition, an arbitrator may not "impose a punitive award or punitive damages" unless a provision in the collective bargaining agreement provides for them. Island Creek, 29 F.3d at 129 (citing Cannelton, 951 F.2d at 594). Notably, under Fourth Circuit precedent, compensation for a loss of union work can be permissible. See Cannelton, 951 F.2d at 594 (writing that if the arbitrator "ordered monetary damages to compensate employees for work they were entitled to perform under the NBCWA, the award might reasonably be construed as compensatory damages for a cognizable loss of union work"). In deciding whether an award is punitive or whether it draws its essence from the agreement,

**MCCC V. UMWA** 1:18-CV-171

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 14], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

courts should be mindful that arbitrators "need not give their reasons for an award," but courts may rely on arbitrators' reasoning to determine whether the arbitrator has applied "his own brand of industrial justice . . . ." Cannelton, 951 F.2d at 594.

In reviewing arbitration awards, courts "must be concerned not to broaden the scope of judicial review of arbitration decisions nor to lengthen a process that is intended to resolve labor disputes quickly." Id. at 595; see also Upshur Coals Corp., 933 F.2d at 231 (writing that "[l]abor arbitration serves the important goal of providing swift resolution to contractual disputes"). "As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the court cannot overturn his decision simply because it disagrees with his factual findings, contract interpretations, or choice of remedies." Misco, 484 U.S. at 30.

As the Fourth Circuit has written, "Above all, we must determine only whether the arbitrator did his job — not whether he did it well, correctly, or reasonably, but simply whether he did it." Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union, 76 F.3d 606, 608 (4th Cir. 1996). In this determination, the Court considers "(1) the arbitrator's role as defined by the CBA; (2) whether the award ignored the plain language of the CBA;

MCCC V. UMWA                                                 1:18-CV-171

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT [ECF NO. 14], GRANTING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the CBA's proscribed limits." Id. Furthermore, "the arbitrator must take into account any existing common law of the particular plant or industry, for it is an integral part of the contract." Norfolk Shipbuilding & Drydock Corp. v. Local No. 684, 671 F.2d 797, 799-800 (4th Cir. 1982). The common law, as described above, does not allow the arbitrator to impose punitive damages unless they are provided for in the agreement. See Cannelton, 951 F.2d at 594.

## V.  DISCUSSION

Recognizing the extremely limited role of the Court in deciding arbitration disputes, the Court finds that the Award draws its essence from the agreement. At a minimum, the Arbitrator "arguably" applied the contract and acted within the scope of his authority. The Arbitrator separately considered the two issues of (1) the classification of the work at issue and (2) whether the work was normally performed at the mine. He then issued an award intended to be compensatory that left damages to the parties to calculate.

As Defendants write in their Motion, the Arbitrator "was aware of the importance of determining the nature of the work performed on the 75 Screen." ECF No. 13 at 17. The NBCWA provides that "[t]he

**MCCC V. UMWA** 1:18-CV-171

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 14], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

production of coal, including . . . repair and maintenance work normally performed at the mine site . . . shall be performed by classified Employees of the Employer covered by and in accordance with the terms of this Agreement." ECF No. 11-1 at 10-11. In analyzing whether the work at issue falls within this provision, the Arbitrator discussed the functions of the 75 Screen and analyzed both parties' characterizations of the work performed. He took testimony on how often work is done on the 75 Screen, what type of work is done, how often certain parts are replaced, and who performs the work.

After considering the arguments and the evidence, the Arbitrator found that it was more appropriate to categorize the work as "performing repairs, although extensive repairs," because many original components were reused. ECF No. 11-4 at 8. The Arbitrator then found, based on evidence presented, "that the repairs performed by the contractor were and are normally and customarily performed by bargaining unit employees." Id. at 9. He did so based on careful analysis of the contract and the evidence presented at the hearing.

Further, there are no grounds to overturn the Arbitrator's monetary award. The Arbitrator left the issue of damages up to the Parties to distribute, while retaining jurisdiction in case the

MCCC V. UMWA                                            1:18-CV-171

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 14], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

parties cannot agree. The monetary award is clearly aimed to compensate because it left the issue of damages to the parties to decide. Further, as Defendants have noted, it "granted only the amount of time directly related to the amount of work performed by contractors." ECF No. 17 at 13. Because the NBCWA is silent as to an appropriate remedy, it is within the Arbitrator's discretion to select one, and the Court finds that this Award draws its essence from the NBCWA.

The Arbitrator issued a thorough and thoughtful award. He analyzed contractual language and applied and distinguished precedent. The Arbitrator did his job, and the Court will refrain from discerning whether he did it correctly or whether the Court would have done it differently. Plaintiff has not made a sufficient showing that the Court should take the drastic step to overturn this arbitration award.

## VI.   CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Summary Judgment is **DENIED** [ECF No. 14], and Defendants' Motion for Summary Judgment is **GRANTED** [ECF No. 12]. The arbitration award is **CONFIRMED**. It is further **ORDERED** that this action be and hereby is **DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket of the Court.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 14], GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF NO. 12], AND CONFIRMING ARBITRATION AWARD**

It is so **ORDERED**.

The Clerk is directed to transmit copies of this memorandum opinion and order to counsel of record.

DATED: September 25, 2019

_/s/ Tom S. Kleeh_
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE